Joseph G. Pia, joe.pia@padrm.com, #9945
Tyson B. Snow, tsnow@padrm.com, #10747
PIA ANDERSON DORIUS REYNARD & MOSS, LLC
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Phone:  (801) 350-9000
Fax: (801) 350-9010

*Attorneys for Plaintiff Etagz, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ETAGZ, INC., an Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>BERKELEY PUBLICATIONS, INC., a New Jersey corporation; CHERI MAGAZINE INC., a New York corporation; CLUB PUBLICATIONS, INC., a New Jersey corporation; GENESIS PUBLICATIONS, INC., a New York corporation; GFL PUBLICATIONS, INC., a New Jersey corporation; HIGH SOCIETY PERIODICALS, INC., a New York corporation; KILLER JOE PRODUCTIONS, INC., a New York corporation; OBT PUBLICATIONS, INC., a New York corporation; SWANK PUBLICATIONS, INC., a New York corporation; VELVET PUBLICATIONS, INC., a New York corporation;<br><br>CONREY PUBLICATIONS, INC., a Delaware corporation; DIAMOND COMMUNICATIONS, INC., a New York corporation; FACES MAGAZINES, INC., a New York corporation; GN MEDIA CORPORATION, a Nevada corporation d/b/a CHERI, CLUB, FOX, and HIGH SOCIETY; HALF MOON MEDIA REPS, INC., a Delaware corporation; MAGNA PUBLISHING GROUP, INC., a Nevada corporation; MPG ADVERTISING, INC., a New Jersey corporation; SPARTAN MEDIA CORP., a Nevada corporation; | **FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Case No. 2:10-cv-01266**<br><br>**Judge Dale A. Kimball**<br><br>**JURY TRIAL DEMANDED** |

UTREX MEDIA CORP., a Nevada corporation;
VIOLET MEDIA CORP., a Nevada corporation;

KABLE DISTRIBUTION SERVICES, INC., a
Delaware corporation; KABLE MEDIA
SERVICES, Inc., a Delaware corporation; KABLE
NEWS COMPANY, INC., an Illinois corporation;

NEWS GROUP DISTRIBUTION SERVICES
INC., a Delaware corporation; THE NEWS
GROUP LP, a Delaware partnership; PROLOGIX
INC., a Delaware corporation; PROLOGIX
DISTRIBUTION SERVICES (WEST) LLC, a
Delaware limited liability corporation;

and DOES 1 – 150.

Defendants.

Plaintiff, Etagz, Inc. ("Etagz"), by and through its attorneys, asserts as its Complaint

against Defendants:

    i)        Berkeley Publications, Inc. ("Berkeley"), Cheri Magazine Inc. ("Cheri"), Club
Publications, Inc. ("Club"), Genesis Publications, Inc. ("Genesis"), GFL
Publications, Inc. ("GFL"), High Society Periodicals, Inc. ("High"), Killer Joe
Productions, Inc. ("Killer"), OBT Publications, Inc. ("OBT"), Swank
Publications, Inc. ("Swank"), Velvet Publications, Inc. ("Velvet"), and Does 1 –
25 (collectively "Publishing Defendants" and each a "Defendant");

    ii)       Conrey Publications, Inc. ("Conrey"), Diamond Communications, Inc.
("Diamond"), and GN Media Corporation d/b/a Cheri, Club, Fox and High
Society ("GN Media" and together with Conrey and Diamond, the "Licensing
Defendants"), Faces Magazines, Inc. ("Faces"), Half Moon Media Reps, Inc.

("Half Moon"), Magna Publishing Group, Inc. ("Magna"), MPG Advertising, Inc. ("MPG"), Spartan Media Corp. ("Spartan"), Utrex Media Corp. ("Utrex"), Violet Media Corp. ("Violet") and Does 26 – 50 (collectively and including the Licensing Defendants, the "Non-Publishing Defendants" and each a "Defendant", and together with the Publishing Defendants, the "Magna Defendants");

iii)  Kable Distribution Services, Inc. ("Kable Distribution"), Kable Media Services, Inc. ("Kable Media"), Kable News Company, Inc. ("Kable News"), and Does 51-75 (collectively "Kable Defendants" and each a "Defendant");

iv)  News Group Distribution Services, Inc. ("News Distribution"), The News Group LP ("News Group"), Prologix, Inc. ("Prologix"), Prologix Distribution Services (West), LLC ("Prologix Distribution"), and Does 76-100 (collectively "News Group Defendants" and each a "Defendant"); and

v)  Does 101-150 (each a "Defendant"),

as follows:

## JURISDICTION AND VENUE

1.     This is a claim for patent infringement that arises under the patent laws of the United States, 35 U.S.C. § 251 et seq. This Court has exclusive subject matter jurisdiction under 28 U.S.C. § 1338.

2.     The Court has personal jurisdiction over each Defendant, as more fully set forth below, because each Defendant has either: i) purposefully availed itself of the State of Utah; or ii) is the alter-ego of a Defendant who has purposefully availed itself of the State of Utah.

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), because a substantial number of products which violate Etagz' trademarks as alleged below are sold in this judicial district.

4.     Venue is proper in this district under 28 U.S.C. §§ 1391(c), because the Defendants are not all located in one State, and the Defendants are subject to personal jurisdiction in this district as alleged below.

## PARTIES

5.     Etagz is an Indiana corporation, with its principal place of business in Springville, Utah.

6.     Etagz owns and has all right, title and interest, including standing to sue for past, present or future infringement, in United States Patent No. 6,298,332 (the "'332 Patent," attached as Exhibit A) entitled "CD-Rom Product Label Apparatus and Method," No. 7,503,502 B2 (the "'502 Patent," attached as Exhibit B) entitled "Computer Readable Hang Tag and Product,"  and No. 7,703,686 B2 (the "'686 Patent," attached as Exhibit C) entitled "Consumer-Computer-Readable Product Label and Apparatus" (collectively, "Etagz' Patents").

4

7.      Berkeley is a New Jersey corporation with its principal place of business at 210 East State Route 4, Suite 211, Paramus, New Jersey, 07652 (the "Paramus Office").

8.      Cheri is a New York corporation with its principal place of business at 801 Second Avenue, New York, New York, 10017 (the "NY Office").

9.      Club is a New Jersey corporation with its principal place of business at the Paramus Office.

10.     Genesis is a New York corporation with its principal place of business at that Paramus Office.

11.     GFL is a New Jersey corporation with its principal place of business at the Paramus Office.

12.     High is a New York corporation with its principal place of business at the NY Office.

13.     Killer is a New York corporation with its principal place of business at the NY Office.

14.     OBT is a New York corporation with its principal place of business at the Paramus Office.

15.     Swank is a New York corporation with its principal place of business at the Paramus Office.

16.     Velvet is a New York corporation with its principal place of business at the Paramus Office.

17.     Conrey is a Delaware corporation with its principal place of business at the NY Office.

18.     Diamond is a New York corporation with its principal place of business at the NY Office.

19.     Faces is a New York corporation with its principal place of business at 46 Violet Avenue, Poughkeepsie, NY 12601 ("Violet Office").

20.     GN Media is a Nevada corporation with its principal place of business at the Paramus Office.

21.     Half Moon is a Delaware corporation with its principal place of business at the NY Office.

22.     Magna is a Nevada corporation with its principal place of business at the Paramus Office.

23.     MPG is a New Jersey corporation with its principal place of business at the Paramus Office.

24.     Spartan is a Nevada corporation with its principal place of business at the Violet Office.

25.     Utrex is a Nevada corporation with its principal place of business at the Violet Office.

26.     Violet is a Nevada corporation with its principal place of business at the Violet Office.

27.     Kable Distribution is a Delaware corporation with its principal place of business at 14 Wall Street, #4C, New York, NY ("Wall Street Office").

28.     Kable Media is a Delaware corporation with its principal place of business at the Wall Street Office.

29.     Kable News is an Illinois corporation with its principal place of business at the Wall Street Office.

30.     News Distribution is a Delaware corporation, with a registered agent at 1108 E South Union Avenue, Midvale, UT 84047 and its principal place of business at 3995 70th Avenue East, Suite B, Fife, WA 98424.

31.     News Group is a Delaware partnership, with its principal place of business at 3995 70th Avenue East, Suite B, Fife, WA 98424.

32.     Prologix is a Delaware corporation with its principal place of business at 3995 70th Avenue East, Suite B, Fife, WA 98424.

33.     Prologix Distribution is a Delaware limited liability company with its principal place of business at 3995 70th Avenue East, Suite B, Fife, WA 98424 and a business location at 1070 South 3800 West, Suite 700, Salt Lake City, UT.

34.     Defendants Does 1-25 are, upon information and belief, subsidiaries or affiliates of the Magna Defendants who were and are involved in the publication of the Magazines (as defined below).  Etagz is not aware of the true names and capacities of these Doe defendants and will amend this Complaint to allege these defendants' true names and capacities when they are ascertained.

35.     Defendants Does 26-50 are, upon information and belief, subsidiaries or affiliates of the Magna Defendants who were and are involved in the sale, or inducement of publication or sale of the Magazines (as defined below).  Etagz is not aware of the true names and capacities of these Doe defendants and will amend this Complaint to allege these defendants' true names and capacities when they are ascertained.

36.     Defendants Does 51-75 are, upon information and belief, subsidiaries or affiliates of the Kable Defendants who were and are involved in the publication, sale, or inducement of publication or sale of the Magazines (as defined below).  Etagz is not aware of the true names and capacities of these Doe defendants and will amend this Complaint to allege these defendants' true names and capacities when they are ascertained.

37.     Defendants Does 76-100 are, upon information and belief, subsidiaries or affiliates of the News Group Defendants who were and are involved in the publication, sale, or inducement of publication or sale of the Magazines (as defined below).  Etagz is not aware of the true names and capacities of these Doe defendants and will amend this Complaint to allege these defendants' true names and capacities when they are ascertained.

38.     Defendants Does 101-150 ("Additional Does") are, upon information and belief, agents, representatives, distributors or contractors (or the subsidiaries or affiliates thereof) of the Magna Defendants, Kable Defendants, and News Group Defendants, and were and are involved in the publication, sale, or inducement of publication or sale of the Magazines (as defined below).  Etagz is not aware of the true names and capacities of these Doe defendants and will amend this Complaint to allege these defendants' true names and capacities when they are ascertained.

## PUBLICATIONS

39.     Berkeley publishes "Cheri" magazine, "Finally Legal" magazine, "Hawk: Burning Angel" magazine, "High Society" magazine, sometimes called "Society" magazine, and "Purely 18" magazine.

40.     Cheri formerly published "Cheri" magazine.

41.     Club publishes "Best of Club" magazine, "Club Confidential" magazine, "Club Extreme" magazine, and "Club International" magazine.

42.     Genesis publishes "Genesis" magazine.

43.     GFL publishes "Fox" magazine, and "Gallery" magazine.

44.     High formerly published "High Society" magazine, sometimes called "Society" magazine.

45.     Killer publishes "Hawk: MILFs in Heat" magazine.

46.     OBT publishes "Leg Action" magazine.

47.     Swank publishes "Swank" and "Swank's Just 18" magazine.

48.     Velvet publishes "Velvet" magazine.

49.     Upon information and belief, the Publishing Defendants (including Does 1-25) publish additional infringing magazines.  Etagz is not aware of the true names of these magazines, and will amend this Complaint to allege these additional infringing products when they are ascertained.

50.     All of the magazines alleged above (the "Magazines"), published by the Publishing Defendants, infringe on trademarks as further alleged below, and are sold in Utah as further alleged below.

## ALTER EGO – MAGNA DEFENDANTS

51.     All or nearly all shares of stock of all of the Magna Defendants are owned by Lawrence Perretta, Frank Perretta, Christopher Perretta, Stephen Perretta, and Timothy Perretta (the "Perretta Individuals").

52.     The officers of the Magna Defendants consist entirely of the Perretta Individuals.

53.     The directors of the Magna Defendants consist entirely of the Perretta Individuals.

54.     Magna handles bookkeeping for all the Magna Defendants.

55.     GN Media, Spartan, Utrex and Violet hold trademarks for all the Magna Defendants, which they license to certain of the other Magna Defendants in transactions other than at arms' length.

56.     All employees or other individuals performing employment services for each Magna Defendant are employed by Faces, which serves as a "staffing agency" for all of the Magna Defendants, despite the fact that the Perretta Individuals own both Faces and the Magna Defendants.

57.     Prior to the filing of this most recent version of the complaint, Magna maintained a website at www.magnapublishing.com which offered for sale into Utah the products made by all Magna Defendants or at their direction.

58.     Magna currently maintains a website at www.xxxsubs.com, which describes itself as "The Official Site of Magna Publishing Group Subscriptions". This website offers subscriptions to the following Magazines: Club, Club International, Club Confidential, Swank, High Society, Cheri, Fox, Swank's Just 18, Gallery, and Finally Legal.

59.     Upon information and belief, the Magna Defendants are all affiliates of each other, and many of them are shell companies.  Additional affiliates include but not limited to Cheri TV, Celebrity Skin, Society, High Society, Fox, Blue Horizon Media, Trans Digital Media, LLC, and Does 1-50.

60.     On information and belief, the Magna Defendants transact business with each other not at arm's length, and as a result, certain of the Magna Defendants are not well capitalized.

61.     Because of their common ownership, officers and directors, the Magna Defendants and their affiliates or shell companies have such a unity of interest, ownership and control such that the separate personalities of the parties does not exist, but instead they are the alter-egos of each other.

62.     The Magna Defendants and their affiliates or shell companies have become the alter ego of each other because: (1) the Magna Defendants are insufficiently capitalized; (2) the Magna Defendants do not observe corporate formalities in their dealings with each others (including by having one company employ all employees, one company provide all bookkeeping, and one website offer products of several Magna Defendants as if they came from one company); (3) the Magna Defendants do not pay regular dividends, or pay all of their income as dividends to parent companies; (4) corporate funds of each of the Magna Defendants are used for the benefit of other Magna Defendants; (5) Magna Defendants do not maintain corporate records; (7) certain of the Magna Defendants use other Magna Defendants as a facade for their operations; and (8) the use of separate corporate entities promotes injustice or fraud.

63.     Observation of the corporate form of the Magna Defendants as separate from their affiliates or shell companies would sanction a fraud, promote injustice, or result in an inequity.

64.     Because each of the Magna Defendants and their respective affiliates or shell companies are the alter egos of one another, each is jointly and severally liable for the

obligations of one another, and judgment must be entered against them jointly and severally, in an amount to be more fully proven at trial.

## ALTER EGO – KABLE DEFENDANTS

65.     Each of the Kable Defendants (other than Kable Media) is a wholly owned subsidiary of Kable Media.

66.     The Kable Defendants operate a website at www.kable.com whereby the entire operation of the Kable Defendants' magazine and periodical circulation is described as one operation.

67.     Upon information and belief, the Kable Defendants are all affiliates of each other, and many of them are shell companies.  Additional affiliates include Does 51-75.

68.     Upon information and belief, the Kable Defendants operate as if they were one entity.

69.     Upon information and belief, the Kable Defendants and their affiliates or shell companies had such a unity of interest, ownership and control that the separate personalities of the parties did not exist, but were instead the alter ego of each other.

70.     Additionally, upon information and belief, the Kable Defendants and their affiliates or shell companies have become the alter ego of each other through all or any of the following factors: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds; (5) absence of corporate records; (7) the use of the corporation as a facade for individual/personal operations; and (8) the use of the corporate entity in promoting injustice or fraud.

71.     Observation of the corporate form of the Kable Defendants as separate from their affiliates or shell companies would sanction a fraud, promote injustice, or result in an inequity.

72.     Because each of the Kable Defendants and their respective affiliates or shell companies are the alter egos of one another, each is jointly and severally liable for the obligations of one another, and judgment must be entered against them jointly and severally, in an amount to be more fully proven at trial.

## ALTER EGO – NEWS GROUP DEFENDANTS

73.     Each of the News Group Defendants is a partner in, or subsidiary of a partner in, News Group.

74.     The News Group Defendants operate a website at www.thenewsgroup.com whereby the entire operation of the News Group Defendants' magazine and periodical circulation is described as one operation or partnership.

75.     Upon information and belief, the News Group Defendants are all affiliates of each other, and many of them are shell companies.  Additional affiliates include Does 76-100.

76.     Upon information and belief, the Kable Defendants operate as if they were one entity.

77.     Upon information and belief, the News Group Defendants and their affiliates or shell companies had such a unity of interest, ownership and control that the separate personalities of the parties did not exist, but were instead the alter ego of each other.

78.     Additionally, upon information and belief, the News Group Defendants and their affiliates or shell companies have become the alter ego of each other through all or any of the following factors: (1) undercapitalization; (2) failure to observe corporate formalities; (3)

nonpayment of dividends; (4) siphoning of corporate funds; (5) absence of corporate records; (7) the use of the corporation as a facade for individual/personal operations; and (8) the use of the corporate entity in promoting injustice or fraud.

79.     Observation of the corporate form of the News Group Defendants as separate from their affiliates or shell companies would sanction a fraud, promote injustice, or result in an inequity.

80.     Because each of the News Group Defendants and their respective affiliates or shell companies are the alter egos of one another, each is jointly and severally liable for the obligations of one another, and judgment must be entered against them jointly and severally, in an amount to be more fully proven at trial.

**SPECIFIC PERSONAL JURISDICTION – FORUM STATE CONTACTS**

81.     Because each of the Magna Defendants is the alter ego of all other Magna Defendants, contact with the forum state of Utah by any one of the Magna Defendants is sufficient to establish personal jurisdiction over all Magna Defendants.

82.     Because each of the Kable Defendants is the alter ego of all other Kable Defendants, contact with the forum state of Utah by any one of the Kable Defendants is sufficient to establish personal jurisdiction over all Kable Defendants.

83.     Because each of the News Group Defendants is the alter ego of all other News Group Defendants, contact with the forum state of Utah by any one of the News Group Defendants is sufficient to establish personal jurisdiction over all News Group Defendants.

84.     Magna currently offers for sale directly to Utah consumers, via its website www.xxxsubs.com, which describes itself as "The Official Site of Magna Publishing Group

Subscriptions", the following Magazines: Club, Club International, Club Confidential, Swank, High Society, Cheri, Fox, Swank's Just 18, Gallery, and Finally Legal, which are published by Publishing Defendants Berkeley, Club, GFL and Swank.

85.     The Publishing Defendants publish the Magazines and intend that the Magazines circulate as widely as possible.  The Publishing Defendants know that, through various contracts they have entered, the Magazines have been and are being, and will continue to be sold in Utah. Upon information and belief, the Publishing Defendants intend this result.

86.     The Magna Defendants have entered into distribution agreements with the News Group Defendants, the Kable Defendants, and the Additional Does, for distribution of the Magazines to retail stores in Utah; the Magna Defendants' Magazines are in fact distributed and available for purchase in the state of Utah.

87.     In order to distribute the Magazines in Utah, Kable Distribution has business locations at 3059 Parkway Boulevard, Salt Lake City, UT 84119 and 965 Beardsley Place, Salt Lake City, UT 84119.

88.     News Distribution and Prologix Distribution are registered to do business in Utah with the Utah Division of Corporations.

89.     Directly, and through distribution agreements targeting Utah, the Magna Defendants, Kable Defendants, News Group Defendants, and Additional Does have purposefully directed Magazines to be sold in Utah.

90.     The Kable Defendants, News Group Defendants, and Additional Does report their sales of Magazines within Utah to the Magna Defendants.

91.     The Supreme Court has held that the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

92.     The Magna Defendants, by authorizing the Kable Defendants, News Group Defendants, and Additional Does to distribute to Utah, expect the Magazines to be purchased by consumers in Utah.

93.     The Magna Defendants, after receiving revenue and reports of sales in Utah from the Kable Defendants, News Group Defendants, and Additional Does, expected these companies to continue to distribute the Magazines in Utah.

94.     Etagz is informed and believes that the Magna Defendants have, through the News Group Defendants, delivered 10,515 Magazines to the Blue Boutique, to be offered for sale at its various locations within Utah (including Salt Lake County), during the years 2008-2012.

95.     Etagz is informed and believes that the Magna Defendants have, through the News Group Defendants, delivered additional Magazines to the Blue Boutique, to be offered for sale at its various locations within Utah (including Salt Lake County), before the year 2008 and since the year 2012.

96.     Etagz is informed and believes that the Magna Defendants have, other than through the News Group Defendants, delivered additional Magazines to the Blue Boutique, to be offered for sale at its various locations within Utah (including Salt Lake County).

97.     Etagz is informed and believes that the Magna Defendants have, directly or through other parties of which they have knowledge, delivered Magazines to Bob's Magazine and Video Corner, to be offered for sale at its various locations within Salt Lake County, Utah.

98.     Etagz is informed and believes that the Magna Defendants have, directly or through other parties, delivered additional Magazines to retailers, including but not limited to the Blue Boutique and Bob's Magazine and Video Corner, to be offered for sale at locations throughout the country, including but not limited to the State of Utah.

99.     The Magna Defendants' Magazines are distributed and available for purchase throughout the state of Utah to Utah consumers.

## PATENT INFRINGEMENT

100.    Etagz realleges and incorporates by reference as if fully set forth herein the preceding paragraphs.

101.    Etagz has complied with the provisions of 35 U.S.C. § 287.

102.    Defendants have knowledge of the '332 Patent, the '502 Patent, and the '686 Patent and are infringing despite such knowledge.  The infringement has been and continues to be willful and deliberate.  Etagz anticipates adding additional infringing products to this action as the discovery process continues.

103.    Defendants are infringing, contributing to the infringement of, and/or inducing infringement of the '332 Patent, the '502 Patent, and the '686 Patent in violation of 35 U.S.C. § 271 as set forth herein and incorporated by this reference.

104. The Magna Defendants, and all of them, either publish, sell, contribute to the publication or sale, or induce publication or sale of the Magazines in violation of 35 U.S.C. § 271.

105. The Kable Defendants, News Group Defendants, and Additional Does, and all of them, either sell, contribute to the sale, or induce sale of the Magazines in violation of 35 U.S.C. § 271.

106. Berkeley publishes the Magazines "Cheri", "Hawk: Burning Angel", "High Society", "Purely 18" and "Finally Legal".

107. Berkeley has infringed at least claims 1 – 10, 26, 29 – 35, 37 – 38, 41 – 42, and 44 – 51 of the '332 Patent (*see* Exh. A; *see also* "Owner's Statement" and "Office Action," attached hereto as Exhibit D and Exhibit E respectively), claims 1 – 5, 10 – 11, 20 – 22 and 24 of the '502 Patent (*see* Exh. B), and claims 1 – 11, 13 – 20, and 27 – 31 of the '686 Patent (*see* Exh. C; *see also* "'686 Patent Reexamination Certificate," attached hereto as Exhibit F) (collectively the "Claims") by, at a minimum, selling the following Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  January 2012, June 2012, July 2012, and August 2012 issues of "Cheri"; Issue No. 25 and 30 of "Hawk:  Burning Angel"; April 2012, July 2012, September 2012, and March 2013 issues "High Society"; Issues # 20, 24, and 25 of "Purely 18"; and Issue # 23 of "Finally Legal."

108. Cheri previously published the Magazine "Cheri" until March 24, 2011.

109. Cheri has infringed at least the Claims by, at a minimum, selling the following Magazine with a computer readable medium attached to the magazine that provides interactive

vendor information, or meets each element of the patented claims as set forth therein:  Holiday

2010 and January 2011 issues of "Cheri" magazine.

110.     Club publishes the Magazines "Best of Club", "Club", "Club Confidential",

"Club Extreme" and "Club International".

111.     Club has infringed at least the Claims by, at a minimum, selling the following

Magazines with a computer readable medium attached to the magazine that provides interactive

vendor information, or meets each element of the patented claims as set forth therein:  Issues #

304 and 320 of "Best of Club"; April 2011 and March 2013 issues of "Club"; June 2012 and July

2012 issues of "Club Confidential"; Issues # 305 and 325 of "Club Extreme"; March 2012, June

2012, and August 2012 issues of "Club International."

112.     Genesis publishes the Magazine "Genesis".

113.     Genesis has infringed at least the Claims by, at a minimum, selling the following

Magazine with a computer readable medium attached to the magazine that provides interactive

vendor information, or meets each element of the patented claims as set forth therein:  the

January 2012 issue of "Genesis."

114.     GFL publishes the Magazines "Club Confidential", "Fox" and Gallery".

115.     GFL has infringed at least the Claims by, at a minimum, selling the following

Magazines with a computer readable medium attached to the magazine that provides interactive

vendor information, or meets each element of the patented claims as set forth therein:  July 2011

issue of "Club Confidential"; Holiday 2010, January 2011, August 2011, and June 2012 issues of

"Fox"; and February 2012 issue of "Gallery."

116.     High previously published the Magazine "High Society" until March 24, 2011.

117.    High has infringed at least the Claims by, at a minimum, selling the following Magazine with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  the January 2011 issue of "High Society."

118.    Killer publishes the Magazine "Hawk: MILFs in Heat".

119.    Killer has infringed at least the Claims by, at a minimum, selling the following Magazine with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  issue #20 of "Hawk:  MILFs in Heat."

120.    OBT publishes the Magazine "Leg Action".

121.    OBT has infringed at least the Claims by, at a minimum, selling the following Magazine with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  issue # 87 of "Leg Action."

122.    Swank publishes the Magazines "Swank" and "Swank's Just 18".

123.    Swank has infringed at least the Claims by, at a minimum, selling the following Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  the July 2011 and July 2012 issues of "Swank."

124.    Velvet publishes the Magazine "Velvet".

125.    Velvet has infringed at least the Claims by, at a minimum, selling the following Magazine with a computer readable medium attached to the magazine that provides interactive

vendor information, or meets each element of the patented claims as set forth therein:  the

September 2010 issue of "Velvet."

126.    With respect to each of the Magazines described above, the Magazines were sold

in Utah with knowledge of the Publishing Defendants.

127.    Conrey previously owned the registered trademark "Cheri" until March 24, 2011.

128.    Conrey has infringed at least the Claims by, at a minimum, licensing its trademark

to encourage the publication and sale of the following Magazine with a computer readable

medium attached to the magazine that provides interactive vendor information, or meets each

element of the patented claims as set forth therein: the Holiday 2010 and January 2011 issues of

"Cheri."

129.    Diamond previously owned the registered trademarks "Society" and "High

Society" until March 24, 2011.

130.    Diamond has infringed at least the Claims by, at a minimum, licensing its

trademarks to encourage the publication and sale of the following Magazine with a computer

readable medium attached to the magazine that provides interactive vendor information, or meets

each element of the patented claims as set forth therein: the January 2011 issue of High Society.

131.    GN Media presently owns the registered trademarks "Cheri", "High Society",

"Genesis", Purely 18", and "Finally Legal".

132.    GN Media has infringed at least the Claims by, at a minimum, licensing its

trademarks to encourage the publication and sale of the following Magazines with a computer

readable medium attached to the magazine that provides interactive vendor information, or meets

each element of the patented claims as set forth therein:  the January 2012, June 2012, July 2012,

and August 2012 issues of "Cheri"; the April 2012, July 2012, September 2012, and March 2013 issues of High Society; the January 2012 issue of Genesis; issues # 20, 24, and 25 of Purely 18; and issue # 23 of Finally Legal.

133.   Spartan presently owns the registered trademarks "Fox", and "Gallery".

134.   Spartan has infringed at least the Claims by, at a minimum, licensing its trademarks to encourage the publication and sale of the following Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  the Holiday 2010, January 2011, August 2011 and June 2012 issues of Fox, and the February 2012 issue of Gallery.

135.   Utrex presently owns the registered trademarks "Club", and "Velvet".

136.   Utrex has infringed at least the Claims by, at a minimum, licensing its trademarks to encourage the publication and sale of the following Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein:  the August 2011 and March 2013 issues of Club, the July 2011, June 2012, and July 2012 issues of Club Confidential, issue nos. 305 and 325 of Club Extreme, and the March 2012, June 2012 and August 2012 issues of Club International.

137.   Violet presently owns the registered trademarks "Leg Action", and "Swank".

138.   Violet has infringed at least the Claims by, at a minimum, licensing its trademarks to encourage the publication and sale of the following Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each

element of the patented claims as set forth therein: Issue No. 87 of Leg Action, and the July 2011 and July 2012 issues of Swank.

139.     The Kable Defendants are wholesale distributors and sell all of the Magazines to retailers.

140.     The Kable Defendants have infringed at least the Claims by, at a minimum, selling and offering for sale to retailers the Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein.

141.     The News Group Defendants are wholesale distributors, and sell all of the Magazines to retailers.

142.     The News Group Defendants have infringed at least the Claims by, at a minimum, selling and offering for sale to retailers the Magazines with a computer readable medium attached to the magazine that provides interactive vendor information, or meets each element of the patented claims as set forth therein.

143.     Etagz is informed and believes that the Defendants, including Doe defendants, have and continue to sell additional products which infringe on Etagz' patents in violation of 35 U.S.C. § 271.  Etagz is not aware of the true names of, and claims infringed by, these Defendants and will amend this Complaint to allege these defendants' true names and infringing conduct when such information is ascertained.

144.     The Non-Publishing Defendants are liable for indirect infringement of the '332 Patent, the '502 Patent, and the '686 Patent by either inducing and/or contributing to direct

infringements of the '332 Patent, the '502 Patent, and the '686 Patent committed by the Publishing Defendants and Licensing Defendants as alleged above.

145.    The Licensing Defendants acted with intent to encourage direct infringements by the Publishing Defendants, and knew or should have known that its actions would induce such direct infringement.

146.    The Licensing Defendants contributed to direct infringements by the Publishing Defendants by providing use of trademarks to the Publishing Defendants so as to increase the profitability of the Magazines, and encourage their continued publication and distribution.

147.    Half Moon and MPG acted with intent to encourage direct infringements by the Publishing Defendants and Licensing Defendants, and knew or should have known that their actions would induce such direct infringement.

148.    Half Moon and MPG contributed to direct infringements by the Publishing Defendants and Licensing Defendants by soliciting and selling advertising space within the Magazines so as to increase the profitability of the Magazines and their trademarks, and encourage their continued licensing, publication and distribution.

149.    Faces acted with intent to encourage direct infringements by the Publishing Defendants, and knew or should have known that its actions would induce such direct infringement.

150.    Faces contributed to direct infringements by the Publishing Defendants by providing staffing to the Publishing Defendants so as to increase the profitability of the Magazines, and encourage their continued publication and distribution.

151.    Defendants' infringement has injured Etagz, and Etagz is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

WHEREFORE, Plaintiff Etagz respectfully requests this Court to enter judgment against all Defendants and their subsidiaries and affiliates and all persons in active concert or participation with them, as follows:

A.      An entry of final judgment in favor of Etagz and against each of the Defendants;

B.      An award of damages adequate to compensate Etagz for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with prejudgment interest from the date the infringement began;

C.      An injunction permanently prohibiting each of the Defendants and all persons in active concert or participation with any of them from further acts of infringement of the '332, '502 and '686 Patents;

D.      Treble damages, attorneys fees and costs.

E.      Such other further relief that Etagz is entitled to under the law, and any other and further relief that this Court or a jury may deem just and proper.

///

///

///

///

///

///

## TRIAL BY JURY DEMANDED

Etagz demands a trial by jury on all issues presented in this Complaint.

DATED:  March 29, 2013.

Respectfully submitted,

PIA ANDERSON DORIUS REYNARD & MOSS

/s/ Joseph G. Pia
Joseph G. Pia
*Attorney for Plaintiff Etagz, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the **FOURTH AMENDED**

**COMPLAINT FOR PATENT INFRINGEMENT** was served via a Notification of Electronic

Filing ("NEF") issued by the Court's CM/ECF system and U.S. Mail on the 29th day of March,

2013 to:

> Bryon J. Benevento
> Kimberly Neville
> SNELL & WILMER
> 15 West South Temple, Suite 1200
> Gateway Tower West
> Salt Lake City, Utah 84101
> bbenevento@swlaw.com
> kneville@swlaw.com
>
> Mark A. Finkelstein
> JONES DAY
> 3161 Michelson Drive, Suite 800
> Irvine, California 92612
> mafinkelstein@jonesday.com
>
> Peter J. Chassman
> Phillip D. Price
> WINSTON & STRAWN LLP
> 1111 Louisiana 25th Floor
> Houston, Texas 77002
> pchassman@winston.com
> pprice@winston.com

PIA ANDERSON DORIUS REYNARD & MOSS

/s/ Joseph G. Pia
Joseph G. Pia
*Attorneys for Plaintiff Etagz, Inc.*